## Richmond

LEXIE ROSE CAMPBELL v. COMMONWEALTH OF VIRGINIA.

November 25, 1940.

Record No. 2273.

Present, All the Justices.

The opinion states the case.

*Carter & Williams, Waldo G. Miles* and *Mary H. Williams,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *G. Stanley Clarke, Assistant Attorney-General,* for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

The plaintiff in error, Lexie Rose Campbell, was tried in the corporation court of the city of Danville, Virginia, for maintaining a nuisance in violation of section 55 of the Alcoholic Beverage Control Act, Code of Virginia, section 4675 (55). He was found guilty and the jury fixed his punishment at a fine of $250.00 and four months in jail.

The case was before the court on an appeal from the judgment of the police court of the city.

The warrant charged that the accused had before been convicted of two similar offenses, stating the dates of such convictions.

The element of the charge was that the accused unlawfully maintained a certain house where alcoholic beverages were unlawfully stored for sale and sold. There was testimony that police officers of the city went to the home of the accused about two o'clock on the morning of July 16, 1939, with a search warrant and upon hearing loud talking and laughing knocked on the door and asked for admission. Receiving no response they broke open the door. In one room they found the accused and his son, and nine other persons, several of whom were under the influence of liquor. There was locked in a cabinet in the room a considerable quantity of gin and whiskey in bottles; a portion of the contents of some of these had been taken out. A number of small drinking glasses and a bowl containing pickles and vinegar and some forks were found. A large table was in the middle of the floor with a cover cloth over it and a drop light from the ceiling. In another room were found fifty-two pints and two quarts of whiskey The officers testified that they found a pack of cards and that a game appeared to have been in progress. There was testimony that when the officers went in a man with something in a paper bag passed them going out of the house. One of the officers, on whose beat the house was, testified that he had seen so many people go in and out that his attention was attracted to it. This was at night time, and he named a specific night in May, 1939, as one of the occasions.

There was evidence upon behalf of the accused from a number of his near neighbors that they had never noticed any conduct or happenings about the place which suggested violations of the law. One of these witnesses testified that she occasionally went to the house to use the telephone and that she had never seen anyone drinking or drunk, and had never seen anyone coming out of the house with a package or packages. Some of these witnesses had

lived opposite or near the accused for a long period of years.

The liquor which was found had been procured at A. B. C. stores, as was evidenced by the proper stamps thereon. There was no bootleg liquor in evidence. The men whom the officers found intoxicated in the room testified that they either carried their own liquor there or drank it before arriving at the house.

To the introduction of the evidence of prior convictions of similar offenses, the accused objected, as being predicated upon a statute which violated his constitutional rights, but, if allowed at all, its application should be limited to the measure of punishment, in the event of his conviction of the offense for which he was being tried.

The statute is subsection 61-b of the Act, Code 1936, section 4675(61b), and is as follows: "In any indictment, information or warrant charging any person with having violated any provision of this Act, it may be alleged, and evidence may thereafter be introduced at the trial of such person to prove, that such person has been previously convicted of a violation or violations of this act."

██ Without expressing an opinion as to the constitutional aspect of the above objection, we think that that part of the objection which insists upon restricting the evidence of former convictions to the quantum of punishment is sound. The terms of the statute do not expressly make such evidence applicable to the case upon trial. We cannot say that its terms impliedly do so. This being true we will not, by construction, undertake to enlarge its effect. The statute is a penal one, and, as has been said, "it is an ancient maxim of the law that all such statutes must be construed strictly against the state and favorably to the liberty of the citizen. The maxim is founded on the tenderness of the law for the rights of individuals, * * ." *Sutherland* v. *Commonwealth*, 109 Va. 834, 65 S. E. 15, 132 Am. St. Rep. 949, 23 L. R. A., N. S. 172.

We have, and long have had, statutes providing for additional punishment to second offenders. In the case of

*Wright* v. *Commonwealth,* 109 Va. 847, 851, 65 S. E. 19, 20, this is said: "It has long been the policy of this Commonwealth to visit with cumulative punishment habitual offenders who come within the terms of these enactments."

In the case just cited, the construction of the statutes providing for additional punishment for second offenders was the matter under consideration and it was said:

"It was not the intention of the statute, even in cases to which it applies, by the introduction of proof of former convictions to supply substantive evidence of the guilt of the accused in the principal case, but only to enhance the punishment in the event his guilt should be proved by independent testimony."

We do not think that there is any real conflict between the *Wright Case, supra,* and the case of *Anthony* v. *Commonwealth,* 142 Va. 577, 128 S. E. 633, in which the section of the prohibition law was upheld which made the general reputation of the defendant as a violator of the prohibition laws competent evidence in a prosecution for any offense against that law. One's general reputation is an existing, continuing state or thing.

In contradistinction one may be guilty of the commission of a crime at one time, and at a subsequent time be as white as the driven snow. Repentance and reform are pillars of the structure of salvation upon which it is built.

Some of the courts have gone far in precluding the receipt of such evidence for any purpose. In *Rand's Case* (*Rand* v. *Commonwealth*), 9 Gratt. (50 Va.) 738, Judge Daniel quotes the language of Park, Judge, in *Rex* v. *Jones,* 25 Eng. C. L. R. 453, "That if the jury were aware of the prisoner's conviction it was (to use a common expression) like trying a man with a rope about his neck."

We think it was prejudicial error upon the part of the trial court to have refused to grant instruction "B", which is as follows:

"B. The jury is instructed that the fact that the defendant has been heretofore convicted of similar or like offenses is not proof that he is guilty of the offense here

charged and such fact should not be considered by the jury in reaching a conclusion as to his guilt or innocence on the present charge."

The instruction "D" as amended by the court is without error.

For the reasons given we reverse the judgment of the trial court and remand the case for such further disposition, not in conflict herewith, as the court and the attorney for the Commonwealth may be advised.

*Reversed and remanded.*