# Richmond

JAMES H. SMITH v. COMMONWEALTH OF VIRGINIA.

May 1, 1944.

Record No. 2810.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Frank A. Kearney* and *Gilbert L. Diggs*, for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *M. Ray Doubles, Assistant Attorney General,* for the Commonwealth.

EGGLESTON, J,. delivered the opinion of the court.

James H. Smith was found guilty by a jury of unlawful possession of alcoholic beverages in violation of section 50 of the Alcoholic Beverage Control Act, as amended by Acts 1936, ch. 255, p. 434, Acts 1938, ch. 234, p. 374 (Michie's Code of 1942, sec. 4675(50) ). The warrant also charged that he had been previously convicted by the trial justice court of "Middlesex county, Virginia, of the illegal transportation of alcoholic beverages." To review the judgment entered upon this verdict the present writ of error was allowed.

One of the errors assigned is that the evidence is insufficient to support the verdict.

The Commonwealth's evidence, which the jury has accepted, is this: The accused operates a small store at Port Haywood, in Mathews county. The building has three rooms downstairs and the same number upstairs. When the premises were searched on May 1, 1943, there was a small stock of merchandise and soft drinks on display in the front room downstairs. The room immediately to the rear of the storeroom showed evidence that it had at one time been used as a kitchen, but not recently. It contained an old wood stove and an old oil stove, neither of which had been "used for a long time." Apparently the third room was used as a dance hall. The three upstairs rooms showed no signs of recent occupancy, and the floors were covered with dust. In one of these rooms there was a couch or old bed which showed no signs of recent use.

Across the road, and about 150 yards from the store, is a residence which had been owned by the accused for about

twenty years. A bedroom and kitchen on the ground floor appeared to be in current use.

Armed with a search warrant, several enforcement officers of the Alcoholic Beverage Control Board, with the sheriff of the county, searched both the residence and the store. In the residence, in an upstairs bedroom, the door to which was locked, were found sixty-two pints of whiskey. At the store the officers found five and one-half pints of whiskey, consisting mainly of the same brands which were found in the residence. All of this whiskey bore stamps indicating that it had been purchased either in Washington or in Maryland. None of it was in containers or bore stamps or other evidence showing that it had been purchased from the Virginia Alcoholic Beverage Control Board. Outside the store were a number of empty whiskey bottles, some of which had been recently used.

The accused was not present when the officers arrived but came up while the search was in progress. He admitted that the five and one-half pints of liquor found at the store were owned by him. According to the testimony of three of the enforcement officers, he likewise admitted that seventeen pints of the whiskey found in the residence were owned by him, and claimed that the remaining liquor found there was owned by his brother-in-law, Albert Canary, who, he (Smith) said, was occupying the residence but was temporarily absent on a visit to New York. At the trial Smith denied having made this admission to the officers, saying that they probably misunderstood him, and that all of the whiskey found in the residence was owned by Canary.

Smith testified that he had not occupied the residence since he and his wife had been divorced several years previous. He contended that for the last six months immediately preceding the raid, the residence had been occupied by his brother-in-law, Albert Canary, and Canary's wife, his (Smith's) sister. Smith further testified that for the last two years he had lived at the store, sleeping in one of the upstairs rooms and using one of the rear downstairs rooms as a kitchen.

But there was evidence for the Commonwealth which warranted the jury in not accepting this testimony of the accused. The sheriff testified that in the preceding two months he had frequently passed Smith's residence and had seen him going in and out of the house. Charles Smith, a brother of the accused, testified that the accused had been living at the residence "ever since I know him," that he (the witness) passed the house every day, that he frequently saw the accused at the house, and that the accused was living there on the day the premises were searched.

While the accused testified that the Canarys had left for New York only a few days previous to the raid, his brother, Charles, testified that they had vacated the premises early in March, and that in fact the accused had lived at the residence even while the Canarys occupied it.

Moreover, the testimony on behalf of the Commonwealth fully warranted the jury in not accepting the story of the accused that he had lived at the store for the last two years. As has been pointed out, the testimony of the officers showed that neither the bedroom over the store in which Smith said he slept, nor the kitchen in which he claimed his meals were prepared, showed that they had been recently so used.

The material portion of section 50 of the Alcoholic Beverage Control Act (Michie's Code of 1942, sec. 4675(50) ) is printed in the margin.[1]

---

[1]"Section 50. *Having, Possessing, Keeping, Carrying, Shipping and Transporting Alcoholic Beverages Illegally Acquired, A Misdemeanor, How Punished.*—If any person, other than a common carrier, shall have, possess, keep, carry, ship or transport alcoholic beverages which have been illegally acquired by such person or any person for whom he is acting, he shall be guilty of a misdemeanor.

"Spirits in the possession of any person and in containers not bearing the required government stamps or seals shall be deemed for the purposes of this act to have been illegally acquired.

"Alcoholic beverages in the possession of any person in amounts in excess of one gallon, in containers not bearing stamps or other evidence showing the same to have been purchased from the board or a person licensed to sell the same under the provisions of this act or other evidence that the tax due to the Commonwealth of Virginia or the markup required by Virginia Alcoholic Beverage Control Board has been paid, shall be deemed for the purposes of this act to have been illegally acquired. * * * "

Under the first paragraph of this section the possession of alcoholic beverages which have been illegally acquired is made a misdemeanor. But to constitute the crime there must be proof both of possession and of illegal acquisition. *Miller* v. *Commonwealth*, 172 Va. 639, 646, 2 S. E. (2d) 343, 346.

The second and third paragraphs of this section provide a rule of evidence for the proof of illegal acquisition. *Miller* v. *Commonwealth, supra* (172 Va., at page 646, 2 S. E. (2d), at page 346). Under the third paragraph proof of possession of alcoholic beverages in excess of one gallon, together with proof that such liquor is "in containers not bearing stamps or other evidence showing the same to have been purchased from the board", or one of its licensees, raises the presumption that the liquor was illegally acquired. But as was pointed out in *Miller* v. *Commonwealth, supra* (172 Va., at page 651, 2 S. E. (2d), at page 349), this presumption is rebuttable and may be overcome by opposing or explanatory evidence. Unless the presumption thus created is so overcome, it prevails over the presumption of innocence and is sufficient to sustain a conviction of guilt. *Miller* v. *Commonwealth, supra* (172 Va., at page 653, 2 S. E. (2d), at page 349). See also, *Powers* v. *Commonwealth, post*, p. 669, this day decided.

Applying these principles to the case before us, it is clear that the Commonwealth has proved the necessary essentials of unlawful possession as defined and prescribed in this section of the Act. According to the testimony of the officers, which the jury has accepted, the accused admitted that he owned seventeen pints, or more than two gallons, of the liquor found in the residence, as well as the five and one-half pints found in the store. Moreover, there was circumstantial evidence which showed that he was in possession of all of the liquor found, for the Commonwealth's evidence tended to prove that he alone was occupying and living at the residence at the time the whiskey was found there.

It is undisputed that the liquor in excess of one gallon was in containers which showed that it had not been ac--

quired from the Virginia Alcoholic Beverage Control Board, or one of its licensees. It is true that the containers showed that it was purchased either in Washington or in Maryland, and it is possible that it may have been lawfully acquired there. But if so, it was the duty of the accused to bring forward evidence to show this and thus overcome the *prima facie* presumption of its illegal acquisition. In the absence of such evidence the presumption of illegal acquisition created by the statute remains and is sufficient to establish his guilt. *Miller* v. *Commonwealth, supra; Powers* v. *Commonwealth, supra.*

Error is assigned to the action of the court in granting Instruction No. 2 at the request of the Commonwealth which reads as follows:

"The court instructs the jury that if they shall believe from the evidence beyond a reasonable doubt that the accused, James H. Smith, had in his possession on the 1st day of May, 1943, more than one gallon of whiskey, in addition to the 5½ pints which he admits he owned not bearing the stamps of the Alcoholic Beverage Control Board of Virginia, then they should find him guilty as charged in the warrant in this case and fix his punishment at a fine of not less than $50 nor more than $500 or confinement in the county jail for not less than 30 days or more than 12 months, either or both."

Counsel for the accused objected to the granting of this instruction on the ground that it failed to set out the necessary elements of the crime of unlawful possession, namely: (1) that "this defendant possessed the whiskey," and (2) that it "was illegally acquired." In his brief he makes the additional argument that the instruction "had the effect of construing the presumption created by subsection 50 * * * to be [a] conclusive presumption."

Viewed in the abstract, separate and apart from the other instructions given, and without regard to the uncontradicted evidence in the particular case, the objection might seem to be well taken. As has been said, it was incumbent upon the Commonwealth to prove two things: (1) Possession of the whiskey; and (2) Its illegal acquisition. And the jury in this

case were so told in Instruction No. 8 which reads as follows:

"The court instructs the jury that before you can find the accused guilty of illegal possession of ardent spirits it is necessary for the Commonwealth to prove beyond all reasonable doubt two essential facts: First, that the defendant actually possessed the alcoholic beverages and secondly, that the same have been illegally acquired by the defendant, and unless the Commonwealth proves the possession by the defendant and the illegal acquisition by the defendant, it is your duty to acquit him."

But as we have also pointed out, in proving the second element of illegal acquisition, the Commonwealth was aided by the rule of evidence laid down in the third paragraph of section 50, namely: that more than one gallon of alcoholic beverages, in the possession of the accused, in containers not bearing the necessary stamps or other evidence showing that it was purchased from the Board, should "be deemed for the purposes of this act to have been illegally acquired."

Had there been any evidence that the liquor was legally acquired there should, and no doubt would, have been inserted in the instruction a provision which would have submitted to the jury the issue as to whether its acquisition was legal or illegal. But in the absence of such evidence the acquisition was not in issue. The Commonwealth was favored by an unrebutted presumption that the acquisition was illegal. The only issue was whether the accused "had in his possession on May 1, 1943, more than one gallon of whiskey" not bearing the proper marks of identification of its purchase from the lawful authorities in Virginia, and this issue the instruction left to the jury.

As was aptly said in *Powers* v. *Commonwealth, supra* (*post*, at page 677), this day decided, "instructions should be framed to state the law applicable to the particular facts which the evidence tends to prove", and that was done here.

The warrant upon which the accused was tried charged that he had theretofore been convicted by the trial

justice court of Middlesex county of the illegal transportation of alcoholic beverages. Evidence of a prior conviction is permitted under section 61b of the Act (Acts 1936, ch. 255, p. 435; Michie's Code of 1942, sec. 4675(61b) ), in order to enhance the punishment of the accused should his guilt be established by independent testimony. *Campbell* v. *Commonwealth*, 176 Va. 564, 568, 11 S. E. (2d) 577, 578.

Through inadvertence the Commonwealth closed its evidence in the case at bar without proving such prior conviction. Whereupon counsel for the accused moved that the allegation be stricken from the warrant. The trial court overruled the motion but indicated its readiness to instruct the jury that at that stage of the trial there was no evidence of such prior conviction.

In our opinion the ruling of the trial court was correct for the evidence had not been concluded and it was quite possible that proof of the prior conviction might thereafter develop. Indeed, that did occur, for after the accused had taken the stand and testified in chief, and had been cross-examined on the matters brought out in his direct examination, he was asked, over the objection of his counsel, whether he had not been convicted on March 24, 1942, in the trial justice court of Middlesex county, of the illegal transportation of whiskey, as alleged in the warrant. He admitted that he had.

The action of the trial court in permitting this question is the basis of the final assignment of error.

First, it is said that this evidence was improper and prejudicial because its purpose was to impeach the accused as a witness and to procure his conviction "of the offense for which he was then being tried by showing that he had previously been convicted of another offense on another day."

This contention is not sound. As has already been said, the evidence of the prior conviction is expressly permitted under section 61b of the Act, as amended, not for the purpose of impeaching the accused as a witness, or of supplying substantive evidence of his guilt in the principal case, but to

enhance his punishment as a second offender should his guilt be proved by independent evidence. *Campbell* v. *Commonwealth, supra* (176 Va., at page 568, 11 S. E. (2d), at page 578). Of course, the trial court should, and no doubt would, had it been so requested, have told the jury the purpose of and the limitation on such evidence.

Since under the statute the Commonwealth had the right to prove the prior conviction of the accused for the purpose stated, the real inquiry with which we are concerned is whether this was done in a proper manner.

This brings us to the main contention of the accused on this phase of the case, which is, that since on direct examination he had not testified concerning his prior conviction, it was not proper or permissible that he be cross-examined with respect thereto. Whether this contention be sound depends upon how far and to what extent the accused waived his immunity against self-incrimination by taking the stand in his own behalf.

At common law the accused was incompetent to testify in his own behalf. Wigmore on Evidence, 3d Ed., Vol. 2, sec. 575, p. 683 *ff*; 1 Greenleaf on Evidence, 16th Ed., sec. 333a, p. 491. In most jurisdictions this disqualification has been removed by statute. See Wigmore on Evidence, 3d Ed., Vol. 2, sec. 488, footnote, p. 525 *ff*, for a collection of these statutes. But in the meantime there had been embodied in the Federal Constitution, and in those of most of the States, provisions guaranteeing to the accused privilege against self-incrimination.

The Fifth Amendment to the Constitution of the United States provides: "No person * * * shall be compelled in any criminal case to be a witness against himself, * * * ."

Section 8 of the Virginia Constitution provides that no person shall "be compelled in any criminal proceeding to give evidence against himself, * * * ."

Because of such constitutional provisions the statutes making the accused a competent witness are necessarily limited to the situation where he voluntarily takes the stand in his own behalf. The majority of these statutes provide that in

a criminal trial the accused shall, at his own request, but not otherwise, be a competent witness, or allowed to testify, usually with the proviso that his failure to do so shall not operate to his prejudice or be the subject of comment by the prosecuting attorney. The Federal statute is of this same general character. See U. S. C. A., Title 28, sec. 632, 20 Stat. 30.

The Virginia statute, Code, sec. 4778, provides as follows:

"In any case of felony or misdemeanor, the accused may be sworn and examined in his own behalf, *and if so sworn and examined, he shall be deemed to have waived his privilege of not giving evidence against himself*, and shall be subject to cross-examination as any other witness; but his failure to testify shall create no presumption against him, nor be the subject of any comment before the court or jury by the prosecuting attorney." (Italics supplied.)

According to the note of the revisors of the Code of 1919, the italicized words were added to remove all doubt that the accused fully waived his privilege of not testifying against himself and might not stop at any stage when a question was asked which would tend to incriminate him.

In *Thaniel* v. *Commonwealth*, 132 Va. 795, 111 S. E. 259, the history, purpose and effect of the present statute was under review. We there pointed out (132 Va., at page 805): "Section 4778 permits the accused himself to testify, but to do so he must accept all of the terms of that section, and (1) 'be deemed to have waived his privilege of not giving evidence against himself;' and (2) 'be subject to cross-examination as any other witness.'" Again, it was said (132 Va., at page 806): "The Virginia statute, however, as already pointed out, seems to go the full length of requiring the accused person to absolutely and in all respects waive his privilege against self-incrimination, as well as to subject himself to cross-examination as other witnesses." These principles were subsequently approved in *Smith* v. *Commonwealth*, 136 Va. 773, 777, 118 S. E. 107.

Thus under the interpretation which we have already placed upon the statute, when the accused takes the stand in

his own behalf he is not only subject to cross-examination, but "absolutely and in all respects" waives his privilege against self-incrimination and is to be treated as any other witness.

This is in accord with the great weight of authority. In the recent case of *Johnson* v. *United States*, 318 U. S. 189, 195, 63 S. Ct. 549, 552, 87 L. Ed. 704, the court quotes with approval the statement in Wigmore on Evidence, 3d Ed., Vol. 8, sec. 2276(2), p. 441, that in taking the stand the accused's "voluntary offer of testimony upon any fact is a waiver as to all other relevant facts, because of the necessary connection between all." In the same section Mr. Wigmore further points out that when the accused thus testifies he is to be treated as any other witness and may be cross-examined on all relevant facts pertaining to the case, unless the statute, in express terms, limits his cross-examination to matters which have been dealt with on direct examination.[2]

In an annotation in 75 Am. St. Rep. 318, 332, Mr. Freeman says that when the accused voluntarily takes the stand he "loses his character as a party, becomes a mere witness, and may be examined as fully as any other witness. * * * He may be examined and must answer concerning all matters which are relevant to the case, whether testified to on the direct examination or not." The text is supported by numerous cases. See also, 11 Va. Law Review 249, 262.

And so, in *Hicks* v. *Commonwealth*, 157 Va. 939, 947, 161 S. E. 919, it was held to be permissible to prove by the admission of the accused, on cross-examination, for the purpose of impeaching his credibility, that he had been convicted of a felony.

Similarly, in *State* v. *Friedman*, 124 W. Va. 4, 18 S. E. (2d) 653, the accused, over the objection of his counsel, was compelled to admit, on cross-examination, for the purpose of impeaching his credibility, that he had been previously convicted. It was held that this was permissible under the

---

[2]See California Penal Code, section 1323, which provides that if the accused "offer himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief."

West Virginia statute (Michie's Code of 1937, sec. 5731 (57-3-6) ), which is almost identical with, and, as the court there said, patterned after, the Virginia statute. See also, *State* v. *Mullenax*, 124 W. Va. 243, 20 S. E. (2d) 901, 905.

The North Carolina statute (Michie's Code of 1939, sec. 1799) provides that in a criminal proceeding the accused "is, at his own request, but not otherwise, a competent witness," and "shall be subject to cross-examination as other witnesses." It was held in *State* v. *Cloninger*, 149 N. C. 567, 63 S. E. 154, 156, that, under this statute, the accused, by becoming a witness in his own behalf, is liable to cross-examination to impair his credibility just as any other witness, and that such cross-examination is not restricted to matters brought out on direct examination. See also, *State* v. *Bailey*, 179 N. C. 724, 102 S. E. 406, 408.

If, in order to impeach his credibility as a witness, it be permissible to show, on cross-examination, that the accused has been previously convicted of a felony or a crime involving moral turpitude, it is, we think, likewise permissible to show, on his cross-examination, that he has been previously convicted of an offense which entitles the Commonwealth to exact greater punishment of him. If by voluntarily taking the stand he has waived the privilege against self-incrimination in the one instance, he has likewise waived it in the other.

In the case at bar, no point was made either here or in the court below that the best evidence rule required the production of the record in order to prove the former conviction of the accused. But, aside from the lack of such a contention, it has long been the practice in this State, for the purpose of impeaching the credibility of a witness, to prove his conviction of a felony or a crime involving moral turpitude, by his admission on cross-examination. *Davidson* v. *Watts*, 111 Va. 394, 397, 69 S. E. 328; *Smith* v. *Commonwealth*, 155 Va. 1111, 1121, 156 S. E. 577; *Bell* v. *Commonwealth*, 167 Va. 526, 538, 189 S. E. 441; *Hicks* v. *Commonwealth*, *supra*.

According to Mr. Wigmore, this practice is permissible in most jurisdictions and is proper because there is no danger that the accused will falsely testify that he has been previously convicted, and hence the truth of the fact is assured. Wigmore on Evidence, 3d Ed., Vol. 4, sec. 1270, p. 545; *idem*, p. 538; 1 Greenleaf on Evidence, 16th Ed., sec. 461-b, p. 579.

See also, *Commonwealth v. Fortier*, 258 Mass. 98, 155 N. E. 8; *State v. Savage*, 86 W. Va. 655, 104 S. E. 153; *State v. Aliff*, 122 W. Va. 16, 7 S. E. (2d) 27, where proof of former convictions by admissions of the accused on cross-examination was upheld.

Furthermore, proof of the prior conviction of the accused by his admission puts him in no worse position than proof by production of the record.

The point is next made that permitting the proof of the prior conviction of the accused in this manner had the effect of improperly allowing the Commonwealth to reopen its case after it had rested.

It is true that a party should put on his case in an orderly manner, and ordinarily this requires that the cross-examination of a witness be confined to the subject of the direct examination. But this rule of procedure is not iron-clad, and it is now universally held that the order in which the evidence is introduced is a matter which rests in the sound discretion of the trial court, and unless abused the exercise of such discretion is not ground for reversal. Wigmore on Evidence, 3d Ed., Vol. 6, sec. 1867, p. 500; *Mohler v. Commonwealth*, 132 Va. 713, 730, 111 S. E. 454; *Widgeon v. Commonwealth*, 142 Va. 658, 663, 128 S. E. 459; *Peoples v. Commonwealth*, 147 Va. 692, 702, 137 S. E. 603; *Mundy v. Commonwealth*, 161 Va. 1049, 1064, 171 S. E. 691.

Moreover, as is pointed out in Wigmore on Evidence, 3d Ed., Vol. 8, sec. 2278, p. 459, to confine the cross-examination of the accused to such matters as have been brought out on direct examination is "palpably unfair to the prosecution", for since it can not call him as a witness or compel him to testify on direct examination, unless it could develop

relevant facts on his cross-examination it might be deprived of all means of proving them, and this, too, although the accused, by voluntarily taking the stand, had waived the privilege of self-incrimination.

On the whole we find no reversible error in the record, and the judgment is

*Affirmed.*