**Earshel Howard SIMS, Petitioner,**

v.

**A. E. SLAYTON, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 71–C–67–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

Oct. 29, 1971.

Williams, 317 F.Supp. 1363, 1367–1370 (E.D.Pa.1970) (Masterson, J.).

Earshel Howard Sims, pro se.

C. Tabor Cronk, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION

WIDENER, Chief Judge.

Petitioner, Earshel Howard Sims, was convicted of murder in the second degree and sentenced to twenty years' imprisonment by a jury in the Circuit Court of Bland County, on October 30, 1968. He has filed, in forma pauperis, a petition for a writ of habeas corpus, pursuant to the provisions of 28 U.S.C. § 2241.

On October 26, 1967, Mrs. Edith Spade was fatally shot in the back inside the doorway of the trailer home located in the rear of the Indian Village Motel Restaurant in Bland County, Virginia.

Sims was convicted of her murder. Sims' petition for writ of error from the second degree murder conviction was rejected by the Virginia Supreme Court on April 29, 1969. In his petition for a writ of error to the state court, Sims assigned the following errors:

1. That his right against self-incrimination was violated because he was cross-examined concerning his silence after his arrest.

2. That the Commonwealth's definition of voluntary manslaughter was erroneous as given in its instruction.

3. That the trial court refused to give Sims' definition of voluntary manslaughter.

4. That the trial court refused to instruct on Sims' theory of the case, which was an accidental killing.

Sims filed his present petition for habeas corpus on May 12, 1971. In it, he sets forth six grounds for relief. Petitioner's first claim is that certain photographs were erroneously introduced into evidence. The photographs were of the dead victim and the scene of the crime. The second and third claims pertain to the definition of voluntary manslaughter. Specifically, his second claim is that the Commonwealth's Instruction #1 was incorrect and incomplete and his third claim is that his Instruction E correctly defined voluntary manslaughter.

The fourth claim for relief alleges that the court refused his Instruction F, which was an accidental killing instruction.

The rule concerning admissibility of testimony and jury instructions is stated in Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960), cert. denied, 362 U.S. 917, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960).

"Normally, the admissibility of evidence, the sufficiency of evidence, and instructions to the jury in state trials are matters of state law and proce-

dure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal." 283 F.2d 798, 802.

█ The court has read and examined the entire record, including exhibits and instructions, and finds no circumstance in the giving or refusal of instructions or receiving the exhibits into evidence which impugns fundamental fairness. Indeed, without a minute examination into Virginia law, the rulings of the trial court seem correct.

It is, then, the opinion of the court that the first, second, third and fourth claims are without merit.

█ Sims' fifth claim pertains to his Fifth Amendment right to remain silent being violated upon cross-examination when, without compulsion, he elected to testify in the trial on his own behalf. He claims the cross-examiner commented upon his remaining silent at the time of his arrest and until the trial.

Sims was well represented at the trial by three competent lawyers. He elected to take the stand voluntarily and testified on his own behalf as to the events in detail as he remembered them; thus, he knowingly waived his privilege to remain silent. An ordinary witness has no privilege to decline to testify altogether, and by taking the stand he waives nothing. He has a choice only when he is asked an incriminating question. Sims was in a vastly different position; he had the option to stay off the stand altogether or to testify. On his direct examination, he had claimed that, although he was there, he did not hear the shotgun blast and did not kill the deceased. The prosecution questioned the accused, over objection, as to why he did not tell the officers or anyone else in authority that he had not heard the gun and did not do the shooting.

The questions on cross-examination were aimed at discrediting the testimony of the defendant offered on direct examination. They were relevant and material to accomplish this end. The court in Brown v. United States, 356 U.S. 148, 155, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958), stated: "* * * [W]hen a witness voluntarily testifies, the privilege against self-incrimination is amply respected without need of accepting testimony freed from the antiseptic test of the adversary process. * * * It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth." This view supports Fitzpatrick v. United States, 178 U.S. 304, 20 S.Ct. 944, 44 L.Ed. 1078 (1900).

In 8 Wigmore, Evidence §. 2273 (McNaughton rev. 1961), p. 452, it is stated that the waiver of the privilege against self-incrimination goes so far as to permit inferences to be drawn from prior omissions or failures or refusals to testify at a time when the privilege existed and the inference would have been prohibited. In Gandy v. United States, 386 F.2d 516 (5th Cir. 1967), cert. den. 390 U.S. 1004, 88 S.Ct. 1246, 20 L.Ed. 2d 104 (1968), the court affirmed the view that the defendant may not testify freely as to events and circumstances which tend to support his defense, and selectively suppress other relevant facts and matters that tend to incriminate him. See also Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943).

The Commonwealth had the right to test the credibility of the petitioner and impeach his testimony. The question immediately arose: if the appellant had such a positive defense, why had he not informed anyone? Human experience teaches that an innocent man will take the first opportunity to state his defense. Failure to assert the defense casts serious doubt upon appellant's testimony, and the Commonwealth had a right to refute any reason he gave for his claimed abnormal conduct. The

prosecutor was not required to believe the testimony of the accused on direct examination.

Section 19.1–264 of the Code of Virginia of 1950, as amended, gives the defendant the right to testify and further provides "he shall be deemed to have waived his privilege of not giving evidence against himself, and shall be subject to cross-examination as any other witness." See Smith v. Commonwealth, 182 Va. 585, 30 S.E.2d 26 (1944); Thaniel v. Commonwealth, 132 Va. 795, 111 S.E. 259 (1922).

The court finds the fifth claim to be without merit.

Sims' sixth and final claim is the refusal to grant his motion to set aside the verdict of the jury and award a new trial for reasons set forth in his claims 1 through 5. In view of the fact that the court has found no merit in such claims, the final claim is without merit.

All pertinent facts are revealed in the record. No further hearing on those claims is required. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

An order is this day entered dismissing the petition.