# Staunton

## CAMPBELL v. COMMONWEALTH OF VIRGINIA.

September 11, 1936.

Present, Campbell, C. J., and Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Dick B. Rouse*, for the plaintiff in error.

*Abram P. Staples, Attorney-General*, and *Joseph L. Kelly, Jr., Special Assistant Attorney-General*, for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

The accused was charged before a police justice of the City of Bristol with maintaining a common nuisance as defined in section 55 of the Alcoholic Beverage Control Act, Acts 1934, chapter 94, and was found guilty.

Upon his appeal to the Corporation Court of the City of Bristol, where he was tried without the intervention of a jury, he was again convicted.

Section 55 of the Act with which we are here concerned makes it a misdemeanor to maintain a common nuisance. The Act defines such nuisance in the following terms:

"All houses, * * * where alcoholic beverages are manufactured, stored, sold, dispensed, given away or used contrary to law by any scheme, or device whatever, * * *."

The accused lived in what is called a slum district of the city. He testified that he traded in live stock in a small way and that where he lived was near the live stock yards.

Two police officers, in execution of a search warrant, found in the home of the accused eleven full pints and two half pints of whiskey and two-thirds of a pint of gin in the ice box; that they were admitted to the house by the wife of the accused; that on their way to the house for the purpose of searching it they saw the accused on the sidewalk of one of the streets and they told him that they had a search warrant for the purpose of searching his home; that accused said, "All right," that he would be up to his home shortly; that all of the liquor found at the home of the accused was properly sealed and stamped with the stamp used by the Alcohol Control Board of the State of Virginia, and was purchased at Store 155, located at Appalachia, Virginia; that stored in the basement of the house was found three dozen half gallon fruit jars and several A. B. C. store cartons.

The Commonwealth then introduced three witnesses to prove its case.

They lived in close proximity to the home of the accused but none of them had ever been in his home; they had never seen any whiskey taken in or away from the home or sold

there; that they had never heard any unusual noise, swearing or commotion emanating from Campbell's home and that they had never made any complaint against the place to the officers of the city.

The onus of their testimony was that automobiles, consisting of taxis and private cars, passed along Virginia Street, day and night, and that more than a usual number stopped in front of Campbell's house; that they had seen people go in and out of the home and one witness testified that some people were carrying packages and this witness testified, "that the passing of cars and people going to and from Campbell's home was a nuisance to himself and family."

It was uncontradicted that there was a great deal of traffic on Virginia Street.

The explanation of the accused of having in his possession the quantity of liquor which was found in his house was that he was fond of it and drank freely; that he frequently had guests to whom he served drinks; that he usually purchased liquor in quantities of one gallon at a time when he visited the Appalachia store; that his supply on hand at the time of the search was purchased at three distinct times as was shown by the marking of the A. B. C. agents from whom it was purchased; that some of the containers found in the basement belonged to him and some he found there when he moved into the house. It may here be said that the Commonwealth's witness, Sulfridge, testified that prior to Campbell's moving into the house, it was occupied by a man who had a reputation for bootlegging.

The explanation is not without reasonableness and naturalness.

It is fully corroborated by the wife of the accused.

Without regard to the testimony of the accused and his witnesses, which, to say the least, was potent in its refutation of the guilt of the accused, we are of the opinion that the evidence is not sufficient to sustain the judgment of the trial court. We therefore reverse the said judgment.

*Reversed.*