# Richmond

JOSEPH P. MCCARRON, EXECUTOR, ET AL. V. COMMONWEALTH OF VIRGINIA.

November 11, 1937.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Royston Jester, Jr.,* for the appellants.

*Abram P. Staples, Attorney-General, Ralph H. Ferrell, Jr., Special Assistant,* and *W. T. Spencer, Jr.,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

This is an appeal by Joseph P. McCarron, executor of Catherine McCarron, deceased, and in his own right, Elizabeth Dugger, Catherine Browning, Frank A. McCarron, J. Elmo McCarron, Dennis D. McCarron and William J.

McCarron, hereinafter referred to as the plaintiffs in error, from a decree of the Corporation Court of the city of Lynchburg, awarding an injunction against them, and one, Will Loftin.

The proceeding was instituted in the name of the Commonwealth of Virginia, under the provisions of the Alcoholic Beverage Control Act (Code 1936, section 4675 (1) et seq.). Its objects were to abate a nuisance alleged to exist on the premises known as No. 519 Twelfth Street, in the said city, and to perpetually enjoin the plaintiffs in error, their agents, employees and servants from permitting the storing, selling, dispensing, giving away and using alcoholic beverages on said premises in violation of said act.

The suit was instituted on September 9, 1936, upon affidavits attached, dated September 7, 1936.

The bill alleged that the premises were owned by the plaintiffs in error; that they "are and have been occupied by one, Will Loftin, a notorious bootlegger"; that "alcoholic beverages are and have been stored, sold, dispensed, given away and used" on said premises on numerous occasions in violation of the law; and that the premises have been the scene of numerous disorders. While it made the alleged tenant a party to the suit, the prayer for the injunction was only against the owners of the property.

The plaintiffs in error filed their answer denying the material allegations of the bill, and averring that if a nuisance had ever existed thereon, it had been abated before they became the owners of the said property and before the institution of these proceedings.

After hearing the evidence, the trial court awarded an injunction, as prayed for in the bill, against the plaintiffs in error and Will Loftin, effective for a period of three months from the date thereof.

The plaintiffs in error excepted to the admission of certain evidence, to the refusal of the trial court to strike out the complainant's evidence, and to the decree awarding the injunction. These exceptions constitute the grounds for the assignments of error.

The Commonwealth introduced evidence to show that the premises had the reputation of being a place where liquor had been sold; that they had formerly been occupied by the said Loftin, who had the reputation of being a bootlegger; that the police had made several raids on the premises, and had found evidence that whiskey was being handled there; that two persons had been arrested there for liquor law violations and convicted; that the premises had been the scene of fights and other disorders; and that the last time the place was raided was August 8, 1936.

The chief of police of the city of Lynchburg, who made an affidavit, dated September 7, 1936, attached to the bill of complaint, admitted that he had not made any investigation, personally or otherwise, on that day to ascertain if anyone occupied the property. He further admitted that upon being requested by one of the owners of the property to find out if the premises were vacant, he sent a police officer there for that purpose on September 8, 1936, and that this officer reported to him they were vacant, and had been vacant for about three weeks. This report he communicated to the owner.

The evidence of the plaintiffs in error showed the following uncontradicted statement of facts:

Mrs. Catherine McCarron, a former owner of the property, died on April 16, 1936, and by her last will and testament, probated on April 24, 1936, devised it to the plaintiffs in error. In 1934 Mrs. Catherine McCarron had placed the property in the hands of her real estate agents to rent. The agents had rented the premises to Loftin, on or about September 9, 1935, as a weekly tenant. The tenant not paying his rent when due, on complaint of the owners he was evicted from the premises by an order of the Municipal Civil Court of the city, in an action of unlawful detainer, on or about April 13, 1936, and prior to the date of the death of Mrs. Catherine McCarron.

Following the eviction of Loftin from the premises, they remained vacant until May 22, 1936, when the agents rented the same property to Cecil Tinsley. The agents refused to

rent the property to Tinsley until they had been assured by the latter that he had no connection with Loftin, and would not permit Loftin to occupy the premises.

On or about August 8, after Tinsley had gotten in some trouble with the police, a woman who had been a roomer in the property requested permission of the agents to stay there, but permission was refused. Notice to vacate was then given to Tinsley by these agents, and the property was completely vacated on or about August 15, 1936, and thereafter remained vacant.

The property was vacant on September 9th, when the bill was filed, and was vacant when the cause was heard. Loftin had not, at any time, occupied the premises as a tenant after the date the plaintiffs in error acquired the property; if he was, at any time, thereon, it was without their knowledge, approval or consent, or that of their agents. The present owners and their agents denied that they had any information or knowledge that the premises had been, or would be, used for an illegal purpose. There was no evidence to indicate that the plaintiffs in error acted otherwise than in perfectly good faith.

The proceedings were based on Virginia Code, 1936, sections 4675 (55) and 4675 (56).

Section 4675 (55) provides a definition of the type of nuisance under consideration, as follows:

"All houses, boat-houses, buildings, * * *, where alcoholic beverages are manufactured, stored, sold, dispensed, given away or used contrary to law by any scheme, or device whatever, shall be held, taken and deemed common nuisances. * * *"

Section 4675 (56) provides when and how such a nuisance may be abated by injunction:

"The Board * * *, the attorney for the Commonwealth, or any citizen of the county, city or town, where such a nuisance, as is defined in section fifty-five of this act exists, or is kept or maintained, may, in addition to the remedies given in and punishment imposed by this act, maintain a suit in equity in the name of the Commonwealth to abate

and perpetually to enjoin the same. * * *   Upon the hearing of the cause, when it shall have been matured and set for hearing as required by law, upon deposition of witnesses, documentary and oral evidence, of (if) the court or judge in vacation, shall be satisfied that the material allegations of the bill are true, although the premises complained of may not then be unlawfully used, it or he shall continue the injunction against such house, building or place for such period of time as the court may think proper, with the right to dissolve the injunction upon the application of the owner of such house, building or place if a proper case is shown for dissolution."

The Commonwealth contends that, under the circumstances of this case, there was only a mere vacancy on the day of the filing of the bill; that such a vacancy does not show an abatement of the nuisance; and that the purpose of the injunction sought is to prevent a recurrence.

The Commonwealth undertakes to support its contentions by relying upon certain Federal cases arising under the now repealed "National Prohibition Act" (27 U. S. C. A. section 1 et seq.), and cases arising under State abatement laws with similar provisions.   The National Prohibition Act differs from the Virginia statute in at least two respects with regard to the rule of evidence applicable.   In U. S. C. A., title 27, section 34, it is provided:   "It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing, * * *."   The next following section, dealing with persons who violate the act, provided:   "In such proceedings it shall not be necessary to show any intention on the part of the accused to continue such violations if the action is brought within sixty days following any such violation of the law."

An examination of the cases cited discloses, in each instance, a distinctly different state of facts from that of the case here under consideration.   In none of the cases relied upon does the evidence show an abatement of the nuisance in good faith before suit was brought.   On the other hand,

the opinions in these cases show, in some instances, that either the owner was the creator of the nuisance, or co-operated with his tenant as such creator. In some instances, the nuisance was continued without any real change in the business, or without change of environment. In some instances, no attempt was made to abate the nuisance until suit was brought, or there was some fact or circumstance in the evidence to indicate a reasonable probability of the continuance of the nuisance.

The question which arises here, is whether a nuisance, which has been voluntarily abated before proceedings are brought, is, nevertheless, subject to a court order abating it.

■■ The Code section under which this action is brought uses the present tense in prescribing when relief may be granted. The words of a statute must be given their ordinary meaning unless a contrary meaning is clearly intended. The words "exists, or is kept or maintained," have a definite and clear meaning. They apply to an actual being, something, in fact, in existence, something continuing and not failing.

■ It seems rather inconceivable to abate something that does not exist. There must, at least, be some continuity of existence, or a continued course, or practice. When the acts complained of have completely ceased, when the practice objected to has been discontinued, and there is no reasonable prospect of recurrence, there is nothing in existence to be stopped. A nuisance to be abated, under the statute, is one either in existence as a matter of fact, or whose existence is merely covered by a sham or pretense of non-existence.

■■ Here the owners and their agents had voluntarily caused all objectionable occupants of the premises to vacate three or four weeks before the suit was instituted, and before any complaint was made to them by the police authorities. The owners were not charged with personally participating in the alleged nuisance. There is nothing in the record to indicate that they did not wish to co-operate with the authorities, or to show a lack of good faith on their

part. On the other hand, the steps that were taken to remove the tenants and occupants from the premises most effectively removed the cause of the alleged nuisance. It does not matter, under the circumstances of this case, what was the reason impelling the removal of the occupants; the effect is the same. No hard and fast rule can be laid down for the determination of the question of whether there is a reasonable probability that unless enjoined, the premises will be used, in the future, for unlawful purposes. This question must be determined under the facts and circumstances of the particular case. In fact, the evidence indicated that the owners did not wish to have such tenants as those who had caused the complaint.

The latter portion of section 4675 (56), in providing for a continuation of the injunction, although the premises may not be unlawfully used at the time of the hearing of the matured case, is manifestly intended to cover those cases where nuisances exist at the time of the institution of the suit, but have been abated before such hearing. Under such circumstances, the provision allows the court to give consideration to the attitude of those who had formerly created or permitted a nuisance, but had abated it only after the institution of legal proceedings. The statute does not authorize the admission of evidence of the former existence of a nuisance, which has been actually abated before the institution of proceedings. Nor is it provided that evidence that the premises have a general reputation of being a place where ardent spirits are sold, shall be sufficient to warrant an injunction. Nor is it sufficient, under this particular statute, that the evidence indicates that the premises have been the scene of disorders other than violation of the liquor laws. The terms of the statute restrict its application to the violations of the law therein specified. The injunction authorized thereunder is manifestly intended to be preventive rather than merely punitive.

When an alleged nuisance has been voluntarily and effectively abated before the institution of any legal proceedings, and there is no reasonable apprehension of its

recurrence, there is nothing to warrant the exercise of the injunctive process of the court.

In *State* v. *Saunders,* 66 N. H. 39, 25 A. 588, 596, 18 L. R. A. 646, a petition was filed in equity to abate a liquor nuisance under the laws of New Hampshire. The court there cited *State* v. *Noyes,* 30 N. H. 279, and said: "A nuisance cannot be abated with or without legal process if it has been discontinued, and has been removed when proceedings are begun against it."

Citing the above case, it is said in 15 R. C. L. page 406, section 175: "To justify the summary abatement of a liquor nuisance, it must appear that a stringent remedy is reasonably necessary to accomplish the purpose, and in determining whether it is reasonable, consideration must be given to the value and nature of the property involved in the nuisance and the difficulty of its suppression, but under no circumstances can a nuisance be abated with or without legal process if it has been discontinued."

In *People* v. *Goddard* (1920) 47 Cal. App. 730, 191 P. 1012, 1016, an action was brought to abate a nuisance on the premises long used for immoral purposes. The owner, after being informed of such use, within eight days caused the persons to be removed therefrom. Three days after the removal, and at a time when no person occupied the property, the complaint was filed. The court said:

"It is, of course, well settled—indeed, it is but the statement of a rule necessarily following from the very logic of such a situation—that, where a nuisance to abate which an action has been commenced has been abated or suppressed by the parties themselves charged with maintaining the nuisance or otherwise prior to the commencement of the action the further prosecution of the action cannot be maintained, and the action should be dismissed, for the very obvious reason that there is then nothing existing against or upon which the injunctive process of the court can or will operate. Joyce on Nuisances, section 486, p. 704; 2 Wood on Nuisances (3d Ed.) section 864."

"It is, of course, elementary that the finding should be drawn to conform to the allegations of the complaint. Where injunctional relief is sought because of repeated and continuous breaches of duty or violations of the law, the evidence must show that such violations, if not prevented, will occur in the future. Relief by injunction looks toward the future. Its purpose is to prevent future injury or to regulate the future conduct of a party. If the transgressions have ceased before the bill is filed and before proceedings are instituted, and if it appears that they will not be repeated, injunctional relief will not be granted. The aggrieved party will be left to his action at law. Hence, in the present instance, if the parties who have maintained their premises as a nuisance in violation of the National Prohibition Act abated the nuisance and ceased violating the law, prior to the institution of any suit, injunctional relief should have been denied." *Shore* v. *United States* (C. C. A. 1922) 282 F. 857, 859.

"The provision that in such an action it shall not be necessary for the court to find that the property involved is being unlawfully used at the time of the hearing is to be regarded simply as a rule of evidence, leaving it open to the court to infer from prior violations the continued existence of the nuisance. Where abatement before entry of decree is conceded as in this case, this rule of evidence can have no application." *United States* v. *Chesebrough, etc., Co.* (D. C. 1926) 11 F. (2d) 537, 539.

"There is clear and satisfactory proof of the existence of a nuisance. There is direct and uncontroverted evidence of a cessation and abatement of that nuisance without any evidence for apprehending a repetition or recurrence of such nuisance. The case resolves itself into the single question whether a closure can be supported by the single fact that the defendants were the owners of old saloon premises where violation of the National Prohibition Act has occurred. I am unable to subscribe to any such rule." *United States* v. *Burtell, et al.* (D. C. 1931) 51 F. (2d) 765, 766.

We are of opinion, for the reasons stated, that the motion to strike the evidence of the Commonwealth should have been sustained. The decree of the trial court is reversed, and the bill and proceedings dismissed.

*Reversed.*