# Richmond

### BESSIE SIRT DUDLEY V. COMMONWEALTH.

November 20, 1939.

Record No. 2158.

Present, All the Justices.

*T. W. Messick,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *G. Stanley Clarke, Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

This is a writ of error to two judgments of the Hustings Court of the city of Roanoke.

Upon an appeal from two judgments entered against her by the civil and police justice of the city of Roanoke, plaintiff in error was tried by a jury upon two warrants charging her with maintaining, and aiding and abetting in maintaining a common nuisance, in violation of the provisions of section 55 of the Alcoholic Beverage Control Act. Code 1936, section 4675 (55). She was found guilty upon both warrants.

The pertinent provision of the Act is as follows: "All houses * * * where alcoholic beverages are manufactured, stored, sold, dispensed, given away or used contrary to law by any scheme, or device whatever, shall be held, taken and deemed common nuisances."

It is assigned as error that the court erred in refusing to set aside the verdicts of the jury, because there is no evidence to support the charges contained in the two warrants.

The facts which the Commonwealth relied upon to sustain the conviction are as follows: The accused and her husband lived at 312½ Nelson street in the city of Roanoke. On October 6, 1938, certain police officers of the city searched the home of accused for contraband liquors. At the time of the search, which occurred at 7:25 P. M., her hus-

band and two other men were in the house. The search resulted in the finding of less than a pint of lawfully acquired whiskey in the refrigerator in the kitchen, and on a table, four large water glasses, three smaller glasses, two wine glasses, and two glasses denominated as whiskey glasses.

On October 15, 1938, at 7:30 P. M., the house was again searched. The occupants of the house, this time, were the accused and four men. As a result of the search, they found one bottle containing less than a quart of whiskey, one bottle containing less than a pint of whiskey, and two quart bottles of whiskey, unopened, in an army locker which belonged to the husband of the accused and which contained wearing apparel also the property of the husband. One of the officers, in describing the premises occupied by the accused, stated that there was a door at the street entrance, and at the top of the steps leading to the apartment of accused there was another door which had a "peep hole" in it. The officers further testified that they had observed people entering the house and departing therefrom; that they had never seen anyone taking in any luggage or bringing out any luggage; that the roms were not occupied at the time of the search; that the accused operated a rooming house which was designated by a sign on the outside; that on several occasions they had seen the husband of the accused enter the "ABC store" which was in the vicinity of the home.

Mrs. Ruth Fielder testified that on more than one occasion she had gone to the house of accused in search of her husband whom she found there in an intoxicated condition; that her husband and Dudley had worked together and were associates for a number of years; and that her husband would leave home when he wanted to drink.

The case of the accused is as follows: H. T. Dudley, her husband, testified that he was a professional football player; that he was the purchaser and owner of the whiskey found upon the premises wherein his wife conducted a rooming house for transients; that he had purchased the whiskey at

various times from the "ABC" store conducted by the Commonwealth in the neighborhood of his wife's apartment; that the two quarts of whiskey found in the army locker were placed there by him for the purpose of entertaining some of his football friends after the game which was to be played the following Sunday; that he was an associate, of several years standing, of Kyle Fielder, the husband of Mrs. Ruth Fielder; that Fielder frequently came to his home; that sometimes he would be sober and sometimes he would be drunk; that sometimes he brought whiskey and gave him a drink; that at other times he gave Fielder whiskey; that he never sold him any whiskey. He further stated that both he and his wife frequently took a drink of whiskey; that he gave it to his friends; and that the usual type of men who occupied rooms in the house were hucksters, who sold their produce on the market, and truck drivers who usually spent the night and left the next day.

The accused testified that she was the wife of H. T. Dudley; that she was duly licensed to conduct a rooming house for transients; that her roomers were principally hucksters and truckers; that they usually spent the night only and rarely ever brought any baggage with them; that she took an occasional drink of whiskey but did not traffic in same; that frequently she found empty bottles in the rooms occupied by her guests; that she broke them and placed the pieces in the garbage container; that Kyle Fielder would come to her home when intoxicated and rent a room for the night, stating that he did not wish to go home. The accused further testified that the house occupied by her was in the same condition when she moved into it as it was on the two occasions when raided by the officers; that the upstairs door was a glass door; that it did not have a "peep hole" in it, nor was it barred, but merely had an ordinary lock on it; that she kept a register for her guests.

A careful examination of the record fails to disclose any direct evidence of the sale of whiskey by the accused. The sole reliance of the Commonwealth to sustain a conviction, is upon the small quantity of liquor found upon the prem-

ises and the character of the people who frequented the house.

The fact that the rooms were not occupied at 7:25 P. M., is not significant, as people of the type shown do not ordinarily retire at so early an hour. Unimportant, also, is the evidence that a few more were in the house when the second search was made. Though their names were ascertained, they were not called as witnesses, nor did anyone testify that they were boisterous or disorderly. If it be conceded that witnesses for the Commonwealth testified to certain suspicious circumstances, such evidence, while sufficient to create a strong suspicion of guilt, is not sufficient to warrant a verdict of guilty. The proof of guilt must be beyond a reasonable doubt, and especially so where the evidence, as it is in the instant case, is wholly circumstantial. Unless her guilt is proved to the exclusion of every reasonable hypothesis of her innocence, the accused is entitled to acquittal.

In our opinion the case at bar is controlled by the decision of this court in *Campbell* v. *Commonwealth,* 167 Va. 448, 187 S. E. 502. In that case it appears that the accused was tried upon a warrant which charged him with maintaining a nuisance in violation of section 55 of the Alcoholic Beverage Control Act. In execution of a search warrant, police officers found in the home of the accused eleven full pints and two half-pints of whiskey and two-thirds of a pint of gin; stored in the basement of the house they found three dozen half-gallon fruit jars and several ABC store cartons. Three witnesses for the Commonwealth testified that automobiles (taxis and private cars), passed along the street bordering the property of the accused and that more than a usual number stopped in front of the house; that they had seen people go in and out of the home, and one witness testified that some people were carrying packages, and this witness further testified, "that the passing of cars and people going to and from Campbell's home was a nuisance to himself and family."

In delivering the opinion of the court, Mr. Justice Browning said:

"The explanation of the accused of having in his possession the quantity of liquor which was found in his house was that he was fond of it and drank freely; that he frequently had guests to whom he served drinks; that he usually purchased liquor in quantities of one gallon at a time when he visited the Appalachia store; that his supply on hand at the time of the search was purchased at three distinct times as was shown by the marking of the A. B. C. agents from whom it was purchased; that some of the containers found in the basement belonged to him and some he found there when he moved into the house. * * *.

"The explanation is not without reasonableness and naturalness.

"It is fully corroborated by the wife of the accused.

"Without regard to the testimony of the accused and his witnesses, which, to say the least, was potent in its refutation of the guilt of the accused, we are of the opinion that the evidence is not sufficient to sustain the judgment of the trial court.   We therefore reverse the said judgment."

The assignment of error is well founded and for the error committed by the trial court, the judgments must be reversed and the cases remanded for a new trial, if the Commonwealth be so advised.

*Reversed.*