# Richmond

MRS. R. L. ST. CLAIR, ETC. V. COMMONWEALTH OF VIRGINIA.

November 20, 1939.

Record No. 2160.

Present, All the Justices.

*W. E. Henson,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *G. Stanley Clarke, Assistant Attorney-General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

Hattie St. Clair was convicted on two warrants, charging her with maintaining a common nuisance as defined in section 55 of the Alcoholic Beverage Control Act, Code, sec. 4675(55), and sentenced on each warrant to confinement in jail for sixty days and fined $100.

The act in question defines a common nuisance to be a place where "alcoholic beverages are manufactured, stored, sold, dispensed, given away or used contrary to law by any scheme or device whatever." Any person who maintains, or who aids, abets, or knowingly is associated with another in maintaining such place is guilty of a misdemeanor.

█ Before a conviction can be sustained under these provisions of the statute, it is necessary for the Commonwealth to establish two separate and distinct facts. First, that alcoholic beverages were habitually used upon the premises contrary to law, and, second, that the defendant maintained, aided, abetted, or knowingly was associated with another in such unlawful use.

When the officers searched the premises described in the warrants, it was ascertained that the accused was under contract to buy the house and lot, and that several families were living therein—the accused, her husband, Rufus St. Clair, and their children; Herman St. Clair and his mother; Herman Ford, his wife, Nellie Ford, and their adopted daughter. The accused also rented rooms and boarded several other people. Among them were F. J. Hartwell, Julian Bondurant, Charlie Davis and Victor Showalter.

The Commonwealth relies upon the following evidence to establish the fact that the premises described in the warrants was a common nuisance:

1. On a Sunday before October 14, the officers had counted as many as one hundred people going in and out of the building. Some were known whiskey drinkers.

2. A number of arrests for drunkenness had been made on the streets of Roanoke near this home.

3. When the officers entered the building on October 14, the accused and her husband were sitting on the front porch. Four occupants of the home, two women and two men, Julian Bondurant and Victor Showalter, were in the kitchen. On a table near where one of the men sat were several glass goblets on a tray, a bottle half full of whiskey and a glass of whiskey. Bondurant claimed all the whiskey in sight. In a cabinet the officers found four quarts of whiskey, all bearing the proper revenue stamps. These stamps indicated that these four bottles were bought at the same time. When the officers searched the premises the second time—that is, on October 22, 1938—the accused was not present. They found eight full quarts of whiskey and one partly filled. At that time five occupants of the home and one visitor were present. Two of the quarts of whiskey were claimed by Dorothy St. Clair, an occupant of the home. Six bottles were found upstairs, but none of the five persons present claimed four of these bottles. At the back of the premises was found several broken bottles. The officers also found a half gallon container full of corks and whiskey caps.

The accused testified that two of her boys, as well as other boys in the neighborhood, made a hobby of collecting corks and bottle caps, and that those on the premises belonged to the boys. It was established that the husband of the accused and several of the men who occupied the premises were habitual drinkers. Some of them frequently drank to excess. Every bottle with any whiskey in it contained proper revenue stamps, thereby conclusively establishing that they were legally acquired. The consecutive serial numbers on the revenue stamps indicated that the whiskey had been purchased at the same time.

Conceding all the testimony of the officers to be true, it is not sufficient to establish beyond a reasonable doubt that alcoholic beverages were dispensed or otherwise used on the premises contrary to law. The fact that the officers observed a number of people visiting this home on one Sunday, and that some of them were drinking, tends to create a suspicion that this building may have been, in common parlance, a "nip joint." However, this testimony alone, or viewed with the other circumstances disclosed, is not sufficient to "produce the full assurance of moral certainty" that whiskey was illegally dispensed or used on the premises. *Nicholas' Case* (*Nicholas* v. *Commonwealth*), 91 Va. 741, 750, 21 S. E. 364, 367; and *Cochran* v. *Commonwealth*, 122 Va. 801, 94 S. E. 329. Until that fact is established no premises can be declared, under the act, to be a common nuisance. In other words, the *corpus delicti* is an essential fact to be established either by direct evidence, or by circumstantial evidence "so strong and intense as to produce the full assurance of moral certainty" that a crime has been committed.

It is a matter of common knowledge that glass goblets or "drinking glasses," broken bottles and bottles containing whiskey, with the proper revenue stamps thereon, are found in and around a great number of homes. It is not unusual for relatives and friends to call upon each other on Sunday. It may be unusual for one hundred people to visit a boarding house on one Sunday, but that fact, plus the presence of six to eight quarts of whiskey properly stamped in the residence visited, is not sufficient for a court or a jury to declare such residence a common nuisance, and thereby make it liable under the statute to be padlocked for an indefinite period.

A comparison of the facts proven in this case with those stated in former opinions of this court on the same question reveals the marked distinction between them. Hence, it is unnecessary to do more than note this fact without discussing the various cases cited in the briefs.

The judgments of the trial court are reversed, and the cases remanded, with direction to dismiss the warrants pending against the accused unless the Commonwealth is in a position to produce additional testimony tending to establish the crimes charged.

*Reversed and remanded.*