# Richmond

WILLIAM CROWE AND JOHN L. ORPHAN v. COMMONWEALTH
OF VIRGINIA.

June 16, 1952.

Record No. 3967.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Ashburn, Agelasto & Sellers* and *Frederick T. Stant, Jr.,* for the plaintiffs in error.

*J. Lindsay Almond, Jr., Attorney General* and *G. Stanley Clarke, Assistant Attorney General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

William Crowe and John L. Orphan were convicted in the police court under separate warrants charging each with the violation of Code, § 4-81. They appealed to the corporation court where the Commonwealth filed a bill of particulars, alleging in substance that the defendants were guilty of maintaining a "common nuisance" on certain premises in the city of Norfolk, "over the period between" March 15 and May 20, 1951, in violation of the statute.[1]

The defendants were tried together before a jury which found both guilty and fixed the punishment of Crowe at three months in jail and a fine of $100, and that of Orphan at six months in jail and a fine of $200. Separate judgments were entered upon the verdicts and we granted writs of error to the two defendants based upon a single record.

The sole question presented to us is whether the Commonwealth's evidence is sufficient to sustain the verdicts.

On March 14, 1951, Orphan opened an establishment on the second floor at 104 Bank street, in the city of Norfolk, under the name of "The Tidewater" or "Tidewater Club." A flight of steps leads from the street level entrance to a second-floor room approximately fifty feet long and twenty-five feet wide. A counter or bar runs lengthwise of the room. There are stools in front of the bar, and twelve or fifteen tables with chairs for the use of customers.

Orphan had a merchant's license under which he sold near-beer, soft drinks, and foodstuffs consisting of sausages, potato

---

[1] The pertinent portion of the statute, as amended by Acts 1950, ch. 446, p. 877, reads thus:

"§ 4-81. All houses, boathouses, buildings, tents, club or fraternity or lodge rooms, boats, cars and places of every description, including drugstores, where alcholic beverages are manufactured, stored, sold, dispensed, given away or used contrary to law, by any scheme or device whatever, shall be deemed common nuisances. Any person who maintains or who aids or abets or knowingly is associated with others in maintaining such common nuisance, is guilty of a misdemeanor; * * *."

chips, etc. He had no license to sell beer or other alcoholic beverages. His principal customers were members of the service personnel. The employees in the establishment were the defendant, Crowe, who was the bartender, and two waitresses.

The evidence is that continuously from the day of the opening, March 14, through May 20, 1951, the police had this establishment under surveillance. During that period they raided or visited it, as the officers estimated, from fifty to two hundred times, sometimes as often as three to six times a night. While open for business the place was unlocked and "wide open for any police officer to come in and out" as he pleased.

Although the premises were frequently searched the police found there no bottles or containers of whiskey, and no empty whiskey bottles. Except in one instance, to which reference will later be made, they were unable to capture any whiskey on the premises. Undercover agents were unsuccessful in their efforts to buy whiskey there. There were no arrests for drinking in public, drunkenness, or disorderly conduct on the premises.

The officers testified that on their frequent visits to the establishment they found from five to thirty sailors or other servicemen sitting around drinking. On occasions some of the empty glasses had the odor of alcohol or whiskey about them, and at times the officers found on the floor and on the tables a liquid which "smelled like whiskey."

Three instances were emphasized by the officers as indicative that the statute was being violated on the premises.

On April 30, when twenty-five customers were present, the officers found a drinking glass containing about three ounces of a mixture under the chair of a sailor who was sitting with three others at a table. A chemical analysis showed the mixture to contain 12.9% of alcohol by weight. On this occasion another empty glass had the odor of whiskey on it.

On May 2 an officer saw a sailor drinking from a glass. After the drink had been consumed the officer smelled the glass and observed that it had the odor of whiskey on it. However, he placed no charge against the man for drinking in a public place, which is a violation of the statute. Code, § 4-78.

On May 20 several officers in civilian clothes raided the premises and attempted to seize a pitcher on the bar which they suspected contained intoxicating liquor. In the scuffle in which several servicemen undertook to thwart the efforts of the police,

the pitcher was overturned or broken and its contents spilled on the floor. One of the officers testified that he put his finger into the spilled liquid and that it tasted and smelled like whiskey.

The theory of the police seemed to be that intoxicating liquor was being consumed on the premises but that the customers or employees of the establishment, being warned of the approach of the officers, were always successful in destroying or disposing of the evidence of their illegal acts. There was evidence that the premises were equipped with a lookout and signal device which was operated from the third floor to give warning to the employees or customers in the establishment whenever the police showed up. By the time the officers reached the second floor, they theorized, the contents of the glasses had been either consumed or poured on the floor or into the sink.

The brief of the Assistant Attorney General concedes that the evidence here is insufficient to sustain a finding that either of the defendants illegally sold or dispensed alcoholic beverages on the premises. It says: "* * * the basis of the violation of the statute is not a sale but that whiskey was being used habitually there by its patrons."

Both of the defendants and one of the waitresses testified that customers were forbidden to bring whiskey on the premises or consume it there. There is no direct evidence that Orphan, the proprietor, or any of his employees knew that this rule was being violated.

In *St. Clair* v. *Commonwealth,* 174 Va. 480, 482, 5 S. E. (2d) 512, 513, we said that before a conviction of maintaining a common nuisance under this statute can be sustained, "it is necessary for the Commonwealth to establish two separate and distinct facts: First, that alcoholic beverages were habitually used upon the premises contrary to law, and, second, that the defendant maintained, aided, abetted, or knowingly was associated with another in such unlawful use."

In that case we further pointed out that these essential elements must be established beyond a reasonable doubt. (174 Va., at page 484, 5 S. E. (2d) at page 514.)

We are of opinion that the evidence here fails to measure up to these requirements.

Despite their frequent raids on or visits to the place, the police were able to produce only three ounces of a liquid having any alcoholic content, and this was in a single glass under a

table occupied by four sailors. No other liquor and no empty or partly filled bottles were found in the possession of any of the employees or customers, or even on the premises.

On another occasion, one of the officers said, an empty glass from which a sailor had taken a drink smelled like whiskey.

The incident of the overturned pitcher, on which the police seemed to rely strongly as evidence that the establishment was dispensing intoxicating liquor to its customers, loses its significance in view of the abandonment of that contention in the brief of the Assistant Attorney General.

At most, we think, the evidence merely supports the inference that occasionally one or more customers of the establishment may have taken a drink of alcoholic beverage on the premises. Beyond their presence in the place there is nothing to connect the defendants, or either of them, with these incidents.

Pursuant to Code, sec. 4-91, the Commonwealth alleged and proved that both of the defendants had been convicted on prior occasions of illegal traffic in liquor. But such evidence was admissible merely to enhance the punishment of the accused should their guilt have been established by independent testimony. It was not proof of guilt of the present offense. *Campbell* v. *Commonwealth,* 176 Va. 564, 568, 11 S. E. (2d) 577, 578; *Smith* v. *Commonwealth,* 182 Va. 585, 595, 30 S. E. (2d) 26, 30, 153 A. L. R. 1150.

Since we are of opinion that the evidence is insufficient to sustain the verdicts complained of, the judgments based thereon are reversed and the prosecutions dismissed.

*Reversed and dismissed.*