# Richmond

HALEY YOUNG v. COMMONWEALTH OF VIRGINIA.

April 20, 1953.

Record No. 4072.

Present, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Broaddus, Epperly & Broaddus,* for plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *G. Stanley Clarke, Assistant Attorney General* and *Frederick T. Gray, Assistant Attorney General,* for defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Haley Young, on being tried by the court after having waived a jury, was found guilty of contempt of court in disobeying an injunction and was sentenced to sixty days in jail and to pay a fine of $50.

The injunction he was charged with disobeying was granted by a decree of the Circuit Court of the City of Martinsville on May 16, 1952. The court therein ordered that W. D. Frith and H. L. Young and all others be enjoined from "manufacturing, storing, selling, dispensing, giving away, or using alcoholic beverages" upon the premises described in the decree, being four lots on the west side of Third street and three lots on the south side of Second street, in the city of Martinsville, "and further described as a service station together with buildings and improvements thereon." The injunction was to continue in effect until July 18, 1952, unless sooner enlarged or dissolved.

On June 11, 1952, a warrant was issued to search the premises of H. L. Young and Dot Frith for alcoholic beverages. This was executed and a return made showing "Nothing found on premises except paper cups containing odor of whiskey. Found on or near premises were eighteen bottles containing whiskey * * *."

Next day, June 12, a rule was issued and served on Haley Young requiring him to appear on July 14 to show cause why he should not be held in contempt for violating the injunction issued "against the West End Amoco Service Station."

On the day fixed the Commonwealth introduced as witnesses three police officers who testified in substance that at about 6:00 p. m. on June 11 they went to the West End Amoco station to execute the search warrant. The station was described as a building containing three rooms on the first floor and two or three rooms upstairs. The front room on the ground floor was the store or sales room, entered through a front door and in front of which were gasoline pumps. To the left was a room housing the grease pit and in the rear was a room entered by doors from both the store room and the grease pit room. In this rear room was a sink, under which was a paper cup container.

When the officers arrived, Young was just outside the front door and there were five or six other men standing in the front room. Two of the officers entered the rear room and there found several paper cups, three or four of which had "small corners of whiskey. Just like a man would take a drink, leave a little whiskey in the cup." The quantity was "so small you couldn't tell whether it was straight whiskey or whiskey mixed with coca cola, but it had the odor of whiskey." One or two other cups had an odor of whiskey. These cups were sitting on the sink except one which had been thrown under the sink. Also on the sink were a couple of empty soft drink bottles. No effort was made to save any whiskey from the cups. One of the officers said he supposed it had evaporated.

About fifteen steps from the northwest corner of the building was found a slatted crate turned upside down, under which, visible through the slats, were a bag and box together containing eighteen bottles of legal whiskey—seventeen full and one partly full. All but five of the bottles bore A. B. C. store labels indicating they had been purchased on June 9 or June 11.

Along the west side of the building was a concrete walk or driveway and the soil between it and the crate was somewhat. sandy and dry. Footprints could be seen where someone had walked back and forth between the driveway and the crate. The nearest building on the west side of the service station was over a hill and approximately 200 yards away.

The place where the whiskey was found was in an open, unimproved lot not owned by the defendant and not a part of the premises described in the injunction proceeding.

At the conclusion of the testimony of the officers, the defendant offering none, the court found the defendant guilty and fixed his punishment as stated. He contends that the evidence did not warrant that finding for these reasons:

■ First, he says there was no proof of the injunction order. An attested copy of the order was filed subsequent to the hearing and is in the record. Formal proof of the order was not necessary as the court could take judicial notice of its own order which was the basis for this prcoeeding. 20 Am. Jur., Evidence, § 84, pp. 102-3; 31 C.J.S., Evidence, § 50 b. at p. 623. *Cf. Fleming* v. *Anderson,* 187 Va. 788, 795, 48 S. E. 2d 269, 272.

■ Next, the defendant argues that there is nothing in the evidence to show that the premises searched were the premises

to which the injunction related, or to show that Haley Young was the person enjoined by the name of H. L. Young. The court apparently considered these matters to be within its judicial knowledge, with such aid as was furnished by its view of the defendant and of the premises. We said in *Darnell* v. *Barker,* 179 Va. 86, 93, 18 S. E. 2d 271, 275, that " 'the individual and extra-judicial knowledge on the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpopse of supplementing the record.' " See *Randall* v. *Commonwealth,* 183 Va. 182, 186, 31 S. E. 2d 571, 572; *Williams* v. *Commonwealth,* 190 Va. 280, 291, 56 S. E. 2d 537, 542. But if there be room for argument on the question of identity of the premises or of the defendant we need not linger over the point here because aside from that question the evidence is otherwise not adequate to support the conviction.

The decree, as we have seen, enjoined the defendant from "manufacturing, storing, selling, dispensing, giving away, or using alcoholic beverages upon the premises." The whiskey found in the crate was admittedly not "upon the premises" and there was no evidence that it ever had been. There was no evidence to establish that it was put there or owned or possessed by the defendant. The cups with the drops of whiskey in them, or the odor of whiskey about them, were evidence that somebody had been drinking or using alcoholic beverages on the premises, but that evidence was not proof that this defendant had violated the terms of the injunction order. The drinking could have been done by the five or six men who were standing in the store room when the officers arrived, or by others who had been there previously. There is no evidence that it was done or participated in by the defendant, who was not in the building when the officers arrived. The drops of whiskey found in these paper cups might be considered *de minimis* with respect to the injunction against storing. But if in quantity sufficient for a conviction on that score, as contended by the assistant attorney general, there is still no evidence to establish that it was stored there by the defendant or that he was responsible for its being there.

The finding of the whiskey on the defendant's premises did not of itself create a presumption that he was the owner or possessor of it, or alone make a *prima facie* case of guilt. *Nicholas* v. *Commonwealth,* 186 Va. 315, 323, 42 S. E. 2d 306, 310;

*Powers* v. *Commonwealth,* 182 Va. 669, 675, 30 S. E. 2d 22, 25; *Sutherland* v. *Commonwealth,* 171 Va. 485, 494, 198 S. E. 452, 456.

The guilt of the defendant must be proved beyond a reasonable doubt before he may be punished for violating the court's injunction. *Nicholas* v. *Commonwealth,· supra,* 186 Va. at p. 321, 42 S. E. 2d at p. 310. The most that can be said of the evidence in this case is that it created suspicion against the defendant; but in cases of this kind, as in criminal proceedings generally, circumstances of suspicion, no matter how grave or strong, are not sufficient to prove guilt. *Powers* v. *Commonwealth, supra,* 182 Va. at p. 676, 30 S. E. 2d at p. 25; *Strange* v. *Commonwealth,* 182 Va. 742, 745, 30 S. E. 2d 552, 554; *Dudley* v. *Commonwealth,* 174 Va. 466, 5 S. E. 2d 473; *Campbell* v. *Commonwealth,* 167 Va. 448, 187 S. E. 502; *Crowe* v. *Commonwealth,* 193 Va. 752, 71 S. E. 2d 77.

The judgment below is therefore reversed and the rule dismissed.

*Reversed and dismissed.*