## Richmond

BERNICE LUTTRELL v. COMMONWEALTH OF VIRGINIA.

MAURICE LUTTRELL v. COMMONWEALTH OF VIRGINIA.

April 22, 1968.

Record Nos. 6753, 6754.

Present, All the Justices.

*H. E. Widener, Jr.; D. H. Frackelton (Widener, Widener & Frackelton,* on brief), for plaintiffs in error in Record Nos. 6753 and 6754.

*William P. Bagwell, Jr., Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error in Record Nos. 6753 and 6754.

HARRISON, J., delivered the opinion of the court.

Bernice Luttrell and Maurice Luttrell, her husband, were convicted in the Municipal Court of Bristol under separate warrants charging each with maintaining a common nuisance in violation of Code § 4-81. Defendants appealed to the Corporation Court where they were tried together before a jury which found both guilty and fixed the punishment of each at 30 days in jail and a fine of $500. Separate judgments were entered upon the verdicts, and we granted writs of

error to the two defendants based upon a single record. Our disposition of the case makes it necessary for us to consider only the assignment of error which deals with the sufficiency of the Commonwealth's evidence to sustain the verdicts.

Code § 4-81 makes it a misdemeanor to maintain a common nuisance and defines it in the following terms:

> "All houses, . . . where alcoholic beverages are manufactured, stored, sold, dispensed, given away or used contrary to law, by any scheme or device whatever, shall be deemed common nuisances . . ."

Defendants lived in a residence identified as 833 Sullins Street, Bristol, Virginia, and located in what is described generally as the business district of the city.

The evidence of police officers is that at intermittent times on October 6-7-8-11, 1966, they stationed themselves at a vantage point across the street from the residence of defendants and kept the premises under surveillance; that during the period of their observation the premises were visited by 60 persons, and that as many as 20 individuals entered and left the Luttrell residence within one 3 hour period; that the persons who entered the home of defendants remained there for very short periods of time; that several were habitual drinkers, described as "known drunks", and were obviously drunk upon arrival and departure; that one, in a very drunken condition, was in and out of the house in one minute and left carrying a brown bag; that some arrived in taxicabs; and that several made repeated visits during the same day.

On October 11th, and thereafter on October 14th and 19th, the officers obtained search warrants, and the premises of defendants were searched. The October 11th search disclosed 44 full pints of whiskey, 7 part pints and 9 empty bottles on the premises, the whiskey being of 6 or 7 different brands. It was noted that of the whiskey found, 8 pints were purchased on October 8th and 34 pints on October 10th. The search on October 14th resulted in the officers finding 3 empty whiskey bottles on a table. The search on October 19th disclosed a partial pint of whiskey on the premises.

On October 19th, warrants were obtained charging each of the defendants with maintaining a common nuisance and alleging three previous convictions for violations of the ABC Act by Maurice Luttrell and one previous violation and conviction by Bernice Luttrell.

The testimony of the officers was further to the effect that neither

of the defendants was known by them to be employed or to have any means of livelihood.

Defendants did not testify, and their only witness was a neighbor, Raymond Parks, who stated that he had been living approximately 65 feet from the Luttrell residence for about 6 months and had no reason to complain about any nuisance or improper activity in that area. He also testified that there was a path or passageway leading by the Luttrell residence which was used by the public.

The theory of the Commonwealth is that alcoholic beverages were being sold, dispensed, given away or used on the premises contrary to law. Conceding all the testimony of the prosecution to be true, it is not sufficient to establish this fact, which is essential for a conviction, beyond a reasonable doubt.

The fact that the officers observed a large number of people visiting this home, including many repeated visitors on the same day; the short length of their visits; the reputation of some as drunks; the quantity of whiskey found in pint bottles and of various brands, creates a strong suspicion that whiskey was being illegally sold, dispensed or used by defendants in this building.

However, there is no evidence that any person frequenting the premises while under observation, or at any other time, ever purchased any whiskey there. No effort was made to have an informer purchase whiskey from defendants or on their premises. No persons were arrested after visiting the Luttrell home who had whiskey in their possession which bore the same purchase date or store serial number or was of the identical brand as whiskey found on the premises when searched. Apparently none of the visitors was interviewed by the officers, and none testified at the trial. There is no evidence of any disturbance occurring in the area of the Luttrell residence or of any disorders or complaints made regarding defendants or their premises for months prior to their arrest.

Admittedly it was unusual for this number of people to visit the premises at such frequent and irregular intervals, and also unusual to find this quantity of whiskey, mainly in pints and in varying brands, but that is not sufficient for a court or jury to declare such residence a common nuisance.

The questions involved here were fully considered by this court in *St. Clair* v. *Commonwealth*, 174 Va. 480, 482, 5 S. E. 2d 512, 513, where it was held that before a conviction for maintaining a common nuisance can be sustained:

". . . [I]t is necessary for the Commonwealth to establish two separate and distinct facts: First, that alcoholic beverages were habitually used upon the premises contrary to law, and, second, that the defendant maintained, aided, abetted, or knowingly was associated with another in such unlawful use."

In commenting on the evidence adduced in *St. Clair*, we further said:

". . . However, this testimony alone, or viewed with the other circumstances disclosed, is not sufficient to 'produce the full assurance of moral certainty' that whiskey was illegally dispensed or used on the premises. . . . Until that fact is established no premises can be declared, under the act, to be a common nuisance. In other words, the corpus delicti is an essential fact to be established either by direct evidence, or by circumstantial evidence 'so strong and intense as to produce the full assurance of moral certainty' that a crime has been committed." 174 Va. 480, 484, 5 S. E. 2d 512, 514.

Here the Commonwealth points to proof of the previous convictions of defendants of violations of the ABC Law. But as was held in *Crowe* v. *Commonwealth*, 193 Va. 752, 756, 71 S. E. 2d 77, 80, ". . . such evidence was admissible merely to enhance the punishment of the accused should their guilt have been established by independent testimony. It was not proof of guilt of the present offense."

A careful examination of the record fails to disclose any direct evidence of the sale of whiskey by defendants or on their premises. The facts and circumstances disclosed in evidence are not sufficient to "produce the full assurance of moral certainty that whiskey was illegally dispensed or used on the premises".

Being of opinion that the evidence is insufficient to sustain the verdicts complained of, we reverse the judgments based thereon and dismiss the prosecutions.

*Reversed and dismissed.*