STATE *ex rel.* JOSEPH A. LAURITA, JR., *Prosecuting Attorney, etc.*

*v.*

JAMES PILEGGI

(No. 12879)

*and*

STATE *ex rel.* JOSEPH A. LAURITA, JR., *Prosecuting Attorney, etc.*

*v.*

GLENNA SPIROFF, *et al., etc.*

(No. 12898)

Submitted September 15, 1970.    Decided October 20, 1970.

*Wilson, Frame & Rowe, Clark B. Frame,* for James Pileggi.

*Michael Tomasky,* for Glenna Spiroff.

*Joseph A. Laurita, Jr.,* Prosecuting Attorney, *Edgar F. Heiskell, III,* Assistant Prosecuting Attorney, for appellee.

BROWNING, PRESIDENT:

These two cases involve appeals from final judgments of the Monongalia County Circuit Court entered September 26, 1969, and November 24, 1969, respectively. The first suit was instituted by the State of West Virginia at the relation of Joseph A. Laurita, Jr., Prosecuting Attorney of Monongalia County, hereinafter sometimes referred to as appellee, against James Pileggi, appellant in Case No. 12879. The second suit was again instituted by appellee Laurita against Glenna Spiroff, Andy Pastoria, Lucille Pastoria and Della K. Nichols, appellants in Case No. 12898.

On April 20, 1969, a member of the West Virginia Department of Public Safety made a complaint before Monongalia County Justice of the Peace Wade S. Tinney that one Rose Pellicconi, a waitress in appellant Pileggi's "Cabana Club," a private liquor and dinner club situate in Morgantown, unlawfully sold him alcoholic liquor between the hours of 2:00 a.m. and 1:00 p.m. on a Sunday in violation of Code, 60-7-12, as amended. On April 21, 1969, a guilty plea was entered on the charge and a fine and costs paid. Thereafter, Laurita

instituted a civil action on May 14, 1969, against Pileggi, upon the following complaint:

\* \* \*

Plaintiff says that in that certain premises, being the club room located on the first floor of a three-story brick building, which club room, commonly known and advertised as the Cabana Club, located at 1150 University Avenue, in the Third Ward of the City of Morgantown, Monongalia County, West Virginia, is a place where alcoholic liquor is manufactured, sold, stored, possessed, given away and furnished contrary to the law of the State of West Virginia . . . and as such is a common and public nuisance.

\* \* \*

Attached to the complaint as an exhibit was a copy of the justice court docket which indicated that Rose Pellicconi was charged with selling the liquor, that she pleaded guilty, and that Pileggi paid the fine.

Thereafter, on June 2, 1969, appellant Pileggi filed an answer stating that he owned the Cabana Club in which he had invested a substantial sum of money; that he had obtained a private club liquor license; that he always closed the club by 2:00 a.m.; that he had instructed his employees not to sell liquor after 2:00 a.m.; and that no such unauthorized sales had ever taken place except for the particular incident involved herein. On September 11, 1969, without notice to Pileggi or his counsel, Laurita presented a temporary injunction order padlocking the club.

On September 24, 1969, the matter was set for hearing. At that hearing appellant presented the testimony of three law-enforcement officers and one other person that no other incidents had ever occurred at the club for which complaints had been made. The fourth witness was an entertainer at the club and testified that the club was always quiet and orderly. Prosecutor Laurita presented no other evidence, but merely relied on the complaint. The court entered an order September 26, 1969, permanently padlocking the Cabana Club. We granted an appeal and supersedeas on October 1, 1969.

In Case No. 12898, the following complaint was filed on November 18, 1969, again after a member of the Department of Public Safety purchased liquor between 2:00 a.m. and 1:00 p.m. on a Sunday from a waitress in a private club owned by appellants:

\* \* \*

Plaintiff says that in that certain premises, being the club room located on the basement floor of a three-story frame building, which club room commonly known and advertised as "The Torch Club", alias "The Owls Club", alias "The Downtowner", located at 233 1/2 Walnut Street, in the Third Ward of the City of Morgantown, Monongalia County, West Virginia, is a place where alcoholic liquor is manufactured, sold, stored, possessed, given away and furnished contrary to the law of the State of West Virginia . . . and as such is a common and public nuisance.

The defendants are persons who maintain, aid or abet or who are concerned in interest with others in maintaining such common and public nuisance.

\* \* \*

Again, attached to this complaint was the justice court docket showing where the waitress had pleaded guilty to the charge of selling liquor in violation of statute and had paid a fine.

On November 20, 1969, again without notice, Prosecutor Laurita presented a petition for a temporary injunction order padlocking the club. Appellants filed an answer on November 24, 1969, in this case much the same as that filed in Case No. 12879. Basically, it denied that the appellants maintained a public nuisance. Also on that date, the final hearing on the matter was set, neither side presenting any evidence. The court then entered an order permanently padlocking the club. We granted an appeal and supersedeas on December 1, 1969.

On September 14, 1970, the cases were submitted for decision upon oral argument and briefs. Because of the common question of law involved in each case, the cases were consolidated for argument and decision by agreement of counsel.

Although in each case there are specific assignments of error, it appears from oral argument and briefs that our decision in each case turns upon one pivotal issue: Does the single sale of an alcoholic drink in violation of Code, 60-7-12, as amended, constitute the place wherein such sale occurred a common and public nuisance as contemplated by Code, 60-6-16, as amended?

Code, 60-6-16, as amended, upon which the trial court relied at the instance of the Prosecuting Attorney of Monongalia County, is contained in the chapter of the Code which was enacted at the Regular Session of the Legislature of 1935 and entitled "State Control of Alcoholic Liquors." This legislation was passed after the repeal of the 18th amendment of the Constitution of the United States for the regulation of the sale of alcoholic beverages in this State. However, that Act and all of its amendments prior to 1966 restricted the sale of such beverages to stores operated by a department of the State government under the direction of the West Virginia Alcohol Beverage Control Commissioner. The language of Code, 60-6-16, as amended, was applicable to all places where "alcoholic liquor is manufactured, sold, stored, possessed, given away, or furnished" except State liquor stores. By Acts of the Legislature, Regular Session, 1967, Chapter 60 was amended by adding Article 7, which is entitled "Licenses to Private Clubs." After the addition of Article 7 it was not unlawful for liquor to be sold, stored or possessed in places other than State liquor stores upon compliance, of course, with the provisions of Article 7 by a prospective licensee.

Code, 60-7-12, as amended, as enacted in 1967, is entitled "Certain acts of licensee prohibited; penalties." One of the prohibitions contained in that section is the selling of liquor on any licensed premises between 2:00 a.m. and 1:00 p.m. on any Sunday, that being the offense charged in these cases. The following section, Code, 60-7-13, as amended, provides that the commissioner may suspend or revoke any license if it is determined that there has been a violation of any provision of Article 7. That section provides in detail that any licensee charged with a violation shall have a right to a hearing if such be demanded within the time specified therein.

After the enactment of the 18th amendment of the Constitution of the United States, Congress passed the Volstead Act relating to nuisance. Here is the pertinent language of the Act:

> Any room, house, . . . place where intoxicating liquor is . . . sold, kept or bartered in violation of this title . . . is hereby declared to be a common nuisance.

For all intents and purposes, the first sentence of Code, 60-6-16, as amended, is identical:

> A place where alcoholic liquor is manufactured, sold, stored, possessed, given away, or furnished contrary to law shall be deemed a common and public nuisance.

Both of these statutes purport to set forth a statutory definition of what is a common (and public) nuisance. On first impression, it appears from both statutes that any place wherein one of the prohibited acts occurs "in violation of this title" or "contrary to law" constitutes the place a nuisance, the common law definition of nuisance notwithstanding. In *United States v. Cohen*, 268 F. 420 (E.D.Mo. 1920), the federal court system was called upon to determine if this was a valid interpretation of the Volstead Act. The court first recognized that common law nuisance contemplated the notion of "continuousness or recurrence of the . . . acts which constitute the nuisance . . . ." The court went on to say:

> The word "nuisance" has a well-defined meaning in the law, and a thing cannot be declared a nuisance by statute, and abated as such, when in fact it is obviously not a nuisance.

Upon the "provisions of the organic law having reference to the constitutional guaranty of due process of law and forbidding the taking of private property for public use without just compensation," the court reasoned that "Congress, therefore, must be deemed to have used the word [nuisance] in its usual and ordinary legal significance, and to have had in mind that it could not pass a law which had the effect to wipe out

the constitutional rights of the citizen in private property." The court's holding on this issue was best summarized by this statement:

> I conclude that Congress, by the use of the words "sold, kept, or bartered" in violation of law, meant either habitually, or continuously, or recurrently so sold, kept, or bartered. *I do not think that a single sale, without more,* and with no evidence of the continuation or recurrence of law violation, or of facts strongly indicating either habitual sales, or long-continued violations, or such a recurrence of unlawful acts or sales as to colorably indicate that the criminal prosecutions and penalties provided by other parts of the act are inadequate to cope with the situation, *would constitute a nuisance* or warrant the interference of a court of equity by injunction; for in such case it is not the crime of selling liquor, or selling a single drink of liquor, by a given person, at a given place, which constitutes the nuisance, but *it is the maintenance and use of the room, house, or place as a situs for the doing thereat of unlawful or criminal acts, which constitute the nuisance.* (Emphasis added.)

Justifying its judicial limitation of the language of the Act, the court looked to the reasoning set forth by the United States Supreme Court in *Lawton v. Steele*, 152 U.S. 133. On the subject of statutes which declare what constitutes a common and public nuisance, the Court said:

> The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, *but is subject to the supervision of the courts.* (Emphasis added.)

The *Lawton* case dealt with a New York statute which declared certain methods of fishing, such as by net, contrary to law, to be public nuisances, and gave any person the right to summarily destroy such nuisances. The main issue before

the Court was whether or not this type of nuisance could only be condemned by judicial proceedings. Its determination of this question was based upon the small value of the "thing" to be destroyed when weighed against the public interest to be protected, and upon this basis, the Court upheld the validity of the statute. Of course, *Lawton* is not squarely in point, but it does recognize the principle that a statute which declares a thing to be a nuisance is, as the Court stated, "subject to the supervision of the courts."

The State of Virginia has a statute almost identical to Code 60-6-16, as amended. In *McCarron v. Commonwealth*, 169 Va. 387, 193 S.E. 509, is this statement: "There must, at least, be some continuity of existence, or a continued course, or practice . . . ." The question before the court in that case was whether a "nuisance" that had been already voluntarily abated was subject to a court order abating it, and the foregoing statement was made in that regard. In *St. Clair v. Commonwealth*, 174 Va. 480, 5 S.E.2d 512, a case involving criminal prosecution under the statute, the court said that first the following fact must be established: "[T]hat alcoholic beverages were *habitually* used upon the premises contrary to law . . . ." (Emphasis added.) It is apparent that Virginia also follows the view that there must be some element of continuity and recurrence present.

Upon the hearing for a permanent injunction, the Sheriff of Monongalia County and the commander of the second district of the Department of Public Safety testified that they had had no complaints with regard to either of these places of business. Mrs. Mabel Howard, organist of the Baptist church of Morgantown, who sometimes entertained at the Cabana Club, testified as to the orderliness of the place and that she had never observed any conduct to the contrary. The petitioner, the Prosecuting Attorney of Monongalia County, offered no evidence and relied solely upon the conviction of the two waitresses for sales made after the statutory closing hour. The owners testified that they had specifically warned their employees against such practices and were unaware of these instances of violation. It is, thus, apparent that there

was no element of "continuousness or recurrence" of the kinds of acts complained of in these two cases.

It is the view of this Court upon the authority heretofore cited and especially in view of the fact that we must read Code, 60-6-16, as amended, with Article 7 of that chapter, that the single sale of alcoholic liquor contrary to law, without more, does not constitute the place wherein such sale occurred a common and public nuisance, the express language of Code, 60-6-16, as amended, notwithstanding. Thus, the Circuit Court of Monongalia County erroneously found these two places of business to be common and public nuisances, and its judgments in that regard are reversed.

*Reversed.*